UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
FRANK ROMANELLI,                                        :
                                                        :
                          Plaintiff,                    :      OPINION AND ORDER
                                                        :
              - against -                               :      11 Civ. 2028 (SAS)
                                                        :
THE LONG ISLAND RAILROAD                                :
COMPANY,                                                :
                                                        :
                          Defendant.                    :
------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Frank Romanelli brings this lawsuit against his employer, the Long Island Railroad Company ("LIRR") pursuant to the Federal Employers Liability Act ("FELA"),[1] alleging that, while employed as a track worker, he was exposed to hazardous environmental contaminants that led to certain pulmonary and cardiac problems. LIRR now brings these motions *in limine* seeking to preclude: (1) Romanelli's medical experts from testifying at trial as to the cause of Romanelli's medical conditions; (2) Romanelli from testifying that he was exposed to any airborne toxins or contaminants, or to an "unsafe" level of airborne contaminants; and (3) Romanelli from testifying that LIRR had or breached a duty to provide him

---

    [1] *See* 45 U.S.C. § 51-60 (2006).

-1-

with a respirator.[2]

## II.    LEGAL STANDARD

The purpose of motions *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial.[3]  A court will exclude evidence on a motion *in limine* only if it is "clearly inadmissible on all potential grounds."[4]  The Federal Rules of Evidence ("FRE") provide that "[i]rrelevant evidence is not admissible"[5] and define "relevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6]  The FRE further state that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[7]

**First Motion *in Limine*:  Testimony of Romanelli's Treating Physicians**

---

[2]    *See* Defendant's Memorandum of Law in Support of Its Motions *In Limine* ("Def. Mem.") at 1.

[3]    *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).

[4]    *United States v. Ozsusamlar*, 428 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).

[5]    FRE 402.

[6]    FRE 401.

[7]    FRE 403.

**Regarding Causation**

LIRR argues that Romanelli has not produced evidence identifying specific "toxins" to which he was allegedly exposed or quantified those exposures.[8] LIRR faults Romanelli for not retaining an industrial hygienist or other qualified expert and relying instead on his treating physicians to testify to the causal relationship between workplace exposures and his ailments.[9] LIRR argues that Romanelli's physicians, Dr. Robert Gordon, a pulmonologist, and Dr. Ralph Caselnova, a cardiologist, did not rely on data regarding actual or estimated exposures, and did not themselves identify or quantify the alleged toxins to which Romanelli was exposed.[10]

Contrary to LIRR's argument, Romanelli does have knowledge of the substances to which he was exposed and the duration of that exposure. He specifies that for "hundreds of days during the years he worked for [LIRR]" he walked the length of railroad tracks ingesting "the thick black cloud of smoke that surrounded him" as he lit ropes "in diesel fuel and kerosine (sic). . . . [H]undreds of other . . . work days were spent choking in a cloud of stone dust as he followed the

---

[8]   *See* Def. Mem. at 2.

[9]   *See id.*

[10]  *See id.* at 12.

'stone truck.'"[11] In addition, he conducted "blacktop work [that] required him to constantly breathe the smoke and fumes from the hot asphalt."[12]

LIRR also argues that the physicians did not identify any data or facts, nor any methodology, upon which they relied in reaching their conclusions about causation.[13] Romanelli replies that "conclusions regarding causation may be properly founded upon differential diagnoses made after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests . . . ."[14] Additionally, Romanelli argues that treating physicians are held to different evidentiary standards than medical experts retained specially for purposes of the trial.[15]

### A.   Applicable Law

The Federal Rules of Civil Procedure ("FRCP") and the FRE now categorize treating physicians as expert rather than lay witnesses. "[I]f the testimony of a treating physician is limited to care, treatment, and diagnosis, that

---

[11]   Plaintiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* ("Pl. Mem.") at 2.

[12]   *Id.* at 3.

[13]   *See* Def. Mem. at 13.

[14]   Pl. Mem. at 9 (quotation marks omitted).

[15]   *See id.*

testimony relies on 'scientific, technical, [and] other specialized knowledge' and is therefore governed by [FRE] 702."[16]  However, unlike other medical experts, treating physicians who are not specially retained for the purposes of trial are not required to provide an FRCP 26(a)(2)(B) report.[17]  "In the absence of an expert report . . . the testimony of [plaintiff's] treating physicians will be limited to opinions they actually formed during the course of treating [plaintiff]."[18]  Courts in the Second Circuit have regularly held that this includes opinions on causation.[19]

---

[16]  *Philbert v. George's Auto & Truck Repair*, No. 04 Civ. 405, 2005 WL 3303973, at *1 (N.D.N.Y. Dec. 6, 2005) (quoting FRE 702).

[17]  *See* Rule 26 Advisory Committee Note ("A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report.").  *Accord Monroe-Trice v. Unum Emp. Short-Term Disability Plan*, No. 00 Civ. 6238, 2003 WL 68033, at *1 (S.D.N.Y. Jan. 8, 2003) (treating physician's failure to file report did not preclude plaintiff from calling him as witness); *Ziemba v. Armstrong*, No. 04 Civ. 2344, 2004 WL 834683, at *1 (D. Conn. Mar. 18, 2004) ("[T]o the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a specially employed expert and is not subject to . . . Rule 26(a)(2)(B) . . . ." (quotation marks omitted)).

[18]  *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012).  *Accord Motta v. First Unum Life Ins. Co.*, No. 09 Civ. 3674, 2011 WL 4374544, at *4 (E.D.N.Y. Sept. 19, 2011).

[19]  *See Regus,* 2012 WL 1711378, at *3 ("Courts in this Circuit . . . have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." (quotation marks omitted)).  *Accord Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) ("[A] treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries. . . . Accordingly, questioning these

Even treating physicians, however, must demonstrate "a scientifically reliable method to support their conclusions."[20]

In FELA claims, the plaintiff carries a lighter burden in establishing causation than in a common law negligence action. Liability attaches when "the proofs justify . . . the conclusion that employer negligence played any part, even the slightest, in producing the injury."[21] Thus, under FELA, when a causal relationship lies within the realm of common knowledge, an expert is not required to testify to it. "Toxic contamination cases [concerning squamous cell carcinoma and migraine headaches]. . . in which genuine doubt exists as to whether exposure to any amount of a particular chemical could cause the plaintiff's injury, are therefore unhelpful."[22] When the causal connection is obvious to the average man, "such as a broken leg from being struck by an automobile," the causal inference

---

physicians as to whether the injuries . . . can be causally related to the accident would appear to be within the scope of the patient's care and treatment.").

[20] *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) ("The ability to diagnose medical conditions is not remotely the same . . . as the ability to deduce, delineate, and describe, in a scientifically reliable manner, the causes of those medical conditions." (quotation marks omitted)).

[21] *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2633 (2011). *Accord DeRienzo v. Metropolitan Transp. Auth.*, 237 Fed. App'x 642, 645 (2d Cir. 2007); *Tufariello v. Long Island R.R..*, 458 F.3d 80, 87 (2d Cir. 2006).

[22] *Tufariello*, 458 F.3d at 89.

can be left to the fact-finder and expert testimony is not required.[23]  This is especially true because the New York Industrial Code mandates that "exhaust gases [that] are visible or create irritating or nauseous fumes shall be presumed to contain such gases in a concentration tending to injure health."[24]

### B. Discussion

As an initial matter, Romanelli's physicians need not provide an expert report as they were not specially retained for trial.  Moreover, because the proposition that the inhalation of large quantities of stone dust and fumes from burning kerosene and fresh asphalt can cause respiratory problems is essentially uncontroversial, it falls within the ken of common knowledge.[25]  Accordingly,

---

[23]   *See id.*

[24]   N.Y. Comp. R. & Regs. tit. 12, § 23-10.2 (2012).

[25]   *See Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 59-60 (2d Cir. 1996) ("[T]rier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness."); *Tufariello*, 458 F.3d at 88 ("[T]here is a *generally understood* causal connection between physical phenomena – in this case, very loud sounds, which we refer to colloquially as deafening – and the alleged injury that would be obvious to laymen, . . . [the claim] may be decided by a fact[-]finder even in the absence of expert testimony." (emphasis added) (quotation marks omitted)). *But see Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("[W]e cannot rely on circumstantial, lay evidence alone to create a genuine issue of material fact as to whether toxins emitted from defendants' vessel caused decedent's cancer. . . . [T]he causal link between exposure to toxins and other behavior and squamous cell carcinoma is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation.").

expert testimony on causality is not required. Thus, any shortcomings in the pulmonologist's assessment do not warrant excluding his testimony.

By contrast, the nexus between pulmonary conditions and cardiac arrhythmias is not so straightforward. Romanelli's cardiologist provides no indication as to what methodology he relied on in concluding that Romanelli's asthma and reactive airway dysfunction syndrome (RADS) caused or even aggravated his heart problems – nor does his pulmonologist provide any support for making these assertions.[26] Therefore, neither physician should be allowed to testify to a causal relationship between Romanelli's workplace exposure and his heart problems. I have informed the parties that I am amenable to reconsidering this ruling if and when the cardiologist provides further information at his deposition.

**Second Motion *in Limine*: Testimony on Romanelli's Exposure to Airborne Toxins or Contaminants**

Next, LIRR argues that Romanelli, as a lay witness, should be precluded from offering any testimony or evidence that he was exposed to hazardous contaminants or toxins. LIRR maintains that Romanelli should not be

---

[26]   *See* Supplemental Expert Witness Disclosure of Dr. Ralph Caselnova, Ex. E to Declaration of Christopher S. Kozak, Defendant's Counsel, in Support of Its Motions *in Limine* ("Kozak Decl."); Expert Witness Disclosure of Dr. Richard Gordon, Ex. D to Kozak Decl.

allowed to testify on this matter because he has no evidence identifying the specific toxins, has not quantified any exposure, and has not alleged that LIRR exceeded regulated or permissible levels of exposure.  Romanelli responds that LIRR has not presented a persuasive rationale as to why he should not be allowed to testify about his workplace conditions.

LIRR further argues that in the absence of expert opinion explaining how and why his exposures constituted negligence on behalf of LIRR, Romanelli's descriptions of his work environment are irrelevant and highly prejudicial.

### A.     Applicable Law

FRE 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness'[s] own testimony."[27]  The Commentaries explain that this requires a witness to "be a percipient witness whose testimony is grounded in first-hand information obtained through one of his or her five senses. . . . The required threshold . . . however, is low, requiring only enough 'to support a finding' by some rational juror of personal knowledge."[28]

---

[27]     FRE 602.

[28]     FRE 602 Advisory Committee Note.

Rule 701 allows lay witnesses to express opinions, inferences, and conclusions only if they are: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[29]

### B. Discussion

Romanelli has first-hand knowledge that he was exposed to dust, fumes and chemicals – substances he observed while working on the tracks. A lay person can identify through ordinary sight, taste and smell that he is surrounded by and routinely ingesting the above. Testimony to that effect is neither irrelevant nor prejudicial. No rational juror would disagree.

However, LIRR correctly notes that Romanelli lacks personal knowledge as to the exact nature of all the substances to which he was exposed or their impact on his health. Accordingly, Romanelli may not refer to "hazardous contaminants" or that he was exposed to them at "unsafe" levels. These constitute opinions which are not rationally based on his perception – or at the very least require scientific or specialized knowledge – and as such are inadmissible.

**Third Motion *in Limine*: Evidence Regarding LIRR's Alleged Failure to Provide a Respirator**

---

[29] FRE 701.

Lastly, LIRR argues for the preclusion of evidence regarding its alleged failure to provide Romanelli with a respirator (and that this failure caused his injuries) because there is no factual evidence or expert opinion to support these claims.[30] LIRR insists there is no evidence that it was required by regulation or otherwise to provide Romanelli with a respirator or that its failure to do so constituted a failure to provide him with a reasonably safe workplace.[31] "Plaintiff has not cited to any regulation (or rule, standard or policy) that required the LIRR to provide him with a respirator for the job . . . ."[32] LIRR additionally claims that Romanelli has not provided evidence as to a causal relationship between the absence of a respirator and his injuries.[33] Significantly, LIRR claims that neither of Romanelli's treating physicians even mention respirators, much less opine on the impact of the absence of one.[34]

Romanelli argues that the New York Industrial Code provides standards for the use of respirators and that he should be permitted to describe his

---

[30] *See* Def. Mem. at 21.

[31] *See id.*

[32] *Id.* at 23.

[33] *See id.* at 21.

[34] *See id.* at 23.

attempts to obtain one.[35] Romanelli further argues that under FELA a worker need not satisfy the common-law proximate cause standard but only establish that the railroad's negligence played a part in bringing about the injury.[36]

### A. Applicable Law

Experts are precluded from testifying on questions of law. Whether there was a duty and what that duty consisted of is a matter of law.[37] Therefore, no expert, much less a lay witness, can testify as to the existence of a duty.[38]

### B. Discussion

Because the nature of LIRR's legal duties is a matter of law, Romanelli may not testify that LIRR had a duty to provide him with a respirator. Further, while Romanelli cites a portion of the New York Industrial Code that provides guidelines for the maintenance of respirators "[w]here this [p]art (rule)

---

[35] *See* Pl. Mem. at 12.

[36] *See id.* at 14 (citing *CSX Transp.*, 131 S. Ct. at 2638-39).

[37] *See Donellan v. Ferag, Inc.*, 26 Fed. App'x 72, 74 (2d Cir. 2002) ("The question of whether a duty exists is a matter of law to be decided by the court.").

[38] *See In re Air Disaster at Lockerbie Scot. on Dec. 21, 1988*, 37 F.3d 804, 827 (2d Cir. 1994) ("[E]xpert testimony expressing a legal conclusion should ordinarily be excluded because such testimony is not the way in which a legal standard should be communicated to the jury.").

requires a respirator to be provided,"[39] he fails to point out where the Code requires the provision of a respirator in the performance of duties like his. In fact, it does not. Instead, Romanelli cites to a section of the Code about presumptions of injury to health from exhaust gases in a completely different portion of the Code – a section that bears no relation to respirators. On the other hand, Romanelli certainly may testify that he was not provided with a respirator despite his repeated requests.

        As to Romanelli testifying about causation, it is commonsensical that a respirator helps minimize the ingestion of dust, fumes and chemicals. What other purpose is there for a respirator? Romanelli is allowed to testify that the lack of a respirator caused him to ingest more dust and fumes than he otherwise would have. Whether the impact of that additional exposure is sufficient to have caused Romanelli's injuries is a question that can be addressed on cross-examination and ultimately decided by the trier of fact.

---

[39] Pl. Mem. at 12 (citing N.Y. Comp. R. & Regs. § 23-1.9).

## III. CONCLUSION

For the foregoing reasons, defendant's motions *in limine* are granted in part and denied in part. The Clerk of the Court is directed to close these motions [Docket # 25].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 13, 2012

## - Appearances -

**For Plaintiff:**

Fredric M. Gold, Esq.
Fredric M. Gold, PC
450 Seventh Avenue, Suite 405
New York, New York 10123
(212) 244-2740

**For Defendant:**

Christopher S. Kozak, Esq.
John A. Bonventre, Esq.
Landman Corsi Ballaine & Ford, P.C.
One Gateway Center, Fourth Floor
Newark, New Jersey 07102
(973) 623-2700

Thomas Chiofolo, Esq.
The Long Island Railroad Company
Law Department – 1143
93-02 Sutphin Blvd. Jamaica Station
Jamaica, New York 11435
(718) 558-8478